**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOUGLAS LESHER**, | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **WOLFE RIDGE MFG LLC**, | : | CIVIL ACTION NO.: |
| Defendant. | : | |
| | : | |
| **ABC CORP. 1-5**, fictitious business entities | : | |
| Defendant. | : | **JURY TRIAL DEMANDED** |

## <u>COMPLAINT IN CIVIL ACTION</u>

Plaintiff, Douglas Lesher ("Plaintiff"), by and through his undersigned counsel, brings this Civil Action against Defendant Wolfe Ridge MFG LLC ("Defendant" or "Wolfe Ridge"), and alleges as follows:

### <u>PARTIES</u>

1. Plaintiff, Douglas Lesher, is an adult individual previously residing at 1750 Main St., Unit #12, Northampton, Northampton County, Pennsylvania 18067.

2. Defendant Wolfe Ridge MFG LLC is a limited liability company organized and existing under the laws of the State of Wisconsin, with its principal place of business located at 4682 Anderson Dr., Eau Claire, Wisconsin 54703.

3. Defendants ABC CORP. 1-5, are fictitious individuals and/or business entities whose

identity remains unknown to Plaintiff. Defendants are alleged and therefore averred to be a manufacturer and or supplier of the Wolfe Ridge Model 17VS-C Vertical Log Splitter (Serial No. DK20230603) and/or its component parts which were provided to Defendant Wolfe Ridge.

4. At all times material hereto, Defendant Wolfe Ridge was engaged in the business of designing, engineering, testing, manufacturing, assembling, marketing, distributing, and selling commercial wood splitters and integrated material handling equipment, including the Wolfe Ridge Model 17VS-C Vertical Log Splitter (Serial No. DK20230603).

**JURISDICTION AND VENUE**

5. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) based on complete diversity of citizenship between Plaintiff and all Defendants. The amount in controversy exceeds $75,000.

6. This Court has personal jurisdiction over Defendant pursuant to 42 Pa.C.S. § 5322 because Defendant purposefully derived benefit from its commercial activities in Pennsylvania by advertising, distributing, and selling its machinery into the Commonwealth, where the subject incident and resulting injuries occurred.

7. Venue is proper in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events, acts, and omissions giving rise to Plaintiff's claims occurred in Northampton County, Pennsylvania, within the Eastern judicial district.

**FACTUAL ALLEGATIONS**

8. Prior to the incident described herein, Defendant(s) designed, manufactured,

marketed, and sold a specific line of vertical log splitters featuring an integrated conveyor belt assembly designed to remove processed wood from the splitting area.

9. The log splitter model in question, a Wolfe Ridge Model 17VS-C Vertical Log Splitter with an attached offload conveyor belt assembly (Serial No. DK20230603), utilizes an open foot switch/pedal actuator mechanism intended to allow the operator to keep both hands free to handle and maneuver large logs within the dangerous crushing zone of the splitting blade.

10. The log splitter was designed to operate in a unified manner: as wood is split, the operator pushes the cut wood pieces onto the conveyor belt to be carried away automatically.

11. A severe engineering and design flaw exists within the integrated conveyor belt component: the conveyor belt design, speed, and positioning do not allow split wood to cleanly catch, transition, and move away.

12. During foreseeable and routine operation, split wood pieces regularly become wedged, catch on the conveyor belt framework, and back up directly at the base of the conveyor system adjacent to the splitting zone.

13. This continuous and systematic backup requires the operator to disrupt their operational rhythm and physically reach or lean over the machine's operational area to manually clear blockages.

14. Compounding this operational hazard, the foot switch actuator mechanism lacks any safety shroud, protective guard, or physical enclosure.

15. Due to the complete absence of a protective foot switch guard, the open pedal is left

entirely exposed to accidental, involuntary, or progressive engagement by an operator's foot while performing necessary or routine maintenance tasks on the adjacent conveyor.

16. On or about September 2, 2025, Plaintiff Douglas Lesher was working in the course and scope of his employment as a maintenance technician at Miller's Mobile Home Manufacturing in Northampton, Pennsylvania.

17. While in the course and scope of performing his duties, Plaintiff was operating a Wolfe Ridge Model 17VS-C Vertical Log Splitter with an attached offload conveyor belt assembly (Serial No. DK20230603).

18. During routine operation, the design of the integrated conveyor belt repeatedly malfunctioned, causing cut wood to back-up and accumulate within the machine's discharge area.

19. While attempting to maintain operational rhythm and clear the foreseeable backup of wood on the conveyor belt, Plaintiff reached toward the jam while his right hand was positioned near a log beneath the vertical cutting ram.

20. As Plaintiff leaned over to clear the conveyor blockage of cut wood, his foot engaged the unguarded foot switch.

21. Upon actuation, the hydraulic blade immediately descended, severing digits 1, 2, 3, and 4 of Plaintiff's right dominant hand, which ultimately resulted in a complete amputation of the hand.

22. Plaintiff has suffered, and will continue to suffer, both physical injury and pain,

mental anguish, permanent and severe scarring and disfigurement, lost wages and earning capacity, and has incurred substantial medical bills and other expenses, resulting from the defective and dangerous condition of the products and from Defendants' defective and inadequate warnings about the risks associated with the products.

23. As a further result of the aforesaid incident, Plaintiff has been obliged to receive and undergo medical attention and care, and to incur various and diverse expenses–all of which Plaintiff may continue to expend and incur for an indefinite time into the future.

24. As still a further result of the aforesaid incident, Plaintiff has or may suffer a severe loss of his earnings and impairment of his earning capacity and power, all of which may continue indefinitely into the future.

25. As yet a further result of the aforesaid incident, Plaintiff has suffered severe physical pain and suffering, trauma, mental upset and anguish and humiliation, and may continue to suffer the same for an indefinite time into the future.

26. As a further result of the aforesaid incident, the Plaintiff has suffered a diminution in his ability to enjoy life and life's pleasures, all of which may continue indefinitely into the future.

**COUNT I - STRICT LIABILITY**
**(Design Defect, Manufacturing Defect, and Failure to Warn)**

27. Plaintiff incorporates paragraphs 1 through 26 by reference as if fully set forth herein.

28. Defendant Wolfe Ridge was the designer, manufacturer, seller, and commercial supplier of the subject 17VS-C vertical log splitter and attached conveyor belt assembly.

29. At the time the subject log splitter left Defendant's custody and control, it was in a defective, unreasonably dangerous condition, and unfit for its intended and reasonably

foreseeable uses.

30. Under Pennsylvania strict product liability law, the subject product was defective under both the Risk-Utility Test and the Consumer Expectations Test.

31. The gravity and severity of the inherent danger, i.e., catastrophic limb amputation, vastly outweighed the minimal burden, feasibility, and financial cost of incorporating safer alternative designs, including:

a. A protective steel shroud/guard housing over the foot pedal actuator to prevent accidental, side, or top weight-shift activation;

b. Interlocking two-hand operational control levers requiring simultaneous two-hand engagement away from the blade zone;

c. A redesigned conveyor belt and feed mechanism to eliminate routine wood jams;

d. The integrated conveyor system features an inadequate clearance and tracking layout that guarantees systematic material backups, forcing operators into the physical zone of danger;

e. The inherent danger in the design outweighs any utility, and a safer, highly feasible, and economically viable alternative design–including a shrouded pedal and self-clearing conveyor tracking–was available and commercially standard at the time of distribution;

f. The product was defective in manufacture in that it failed to conform to safe manufacturing tolerances, quality control checks, or engineering plans, making it more dangerous than an ordinary user would expect;

g. The product was defective due to a failure to warn and inadequate marketing in that Defendant failed to place clear, prominent, and durable hazard warning signs either on the machine or within the user manuals alerting operators to the high risk of limb amputation during clearing

procedures, or instructing users on proper lock-out/tag-out shutdown protocols prior to touching the conveyor layout;

h. Failing to perform human factors engineering and risk analyses regarding predictable operator reactions to conveyor blockages;

i. Manufacturing an integrated conveyor system that created routine operational bottlenecks and forced manual user intervention;

j. Failing to equip the unit with necessary point-of-operation guards or dual-control safety interlocks;

k. Failing to provide safe clearing procedures and prominent hazard warnings on the physical unit.

l. As a direct and proximate result of the defective conditions described above, Plaintiff suffered a complete traumatic amputation of his hand.

32. The machine failed to perform as safely as an ordinary commercial operator would reasonably expect, as a routine effort to clear an auxiliary conveyor jam resulted in immediate, unintended actuation of the primary cutting ram.

33. The product was defective in its manufacture in that it failed to conform to safe manufacturing tolerances, quality control checks, or engineering plans, making it more more dangerous than an ordinary user would expect.

34. The subject machine was further defective due to the lack of adequate, visible, and explicit safety warnings and instructions detailing:

a. The severe risk of accidental foot pedal engagement during clearing;

b. Mandatory lockout/tagout or shutdown procedures required prior to clearing predictable conveyor blockages;

c. If Plaintiff was adequately warned, he would have heeded those instructions.

35. The design, manufacturing defects, and lack of adequate warnings existed at the time the machine was manufactured and sold by Defendant, and reached Plaintiff without substantial alteration.

36. As a direct and proximate result of the defective condition of the subject product, Plaintiff Douglas Lesher sustained the severe personal injuries, disfigurement, and financial losses set forth herein.

**COUNT II: NEGLIGENCE**

37. Plaintiff incorporates paragraphs 1 through 36 by reference as if fully set forth herein.

38. Defendant Wolfe Ridge owed a duty of reasonable care to foreseeable users and operators, including Plaintiff, to design, manufacture, test, inspect, market, and supply machinery safe for its intended and reasonably foreseeable uses.

39. Defendant breached its duty of care and was negligent in:

a. Designing a foot pedal actuator that lacked standard protective guarding or shrouding to prevent accidental stepping or weight-shift activation;

b. Failing to perform human factors engineering and risk analyses regarding predictable operator reactions to conveyor blockages;

c. Manufacturing an integrated conveyor system that created routine operational bottlenecks and forced manual user intervention;

d. Failing to equip the unit with necessary point-of-operation guards or dual-control safety interlocks;

e. Failing to provide safe clearing procedures and prominent hazard warnings on the physical unit.

40. As a direct and proximate result of Defendant's negligence, Plaintiff sustained severe personal injuries, permanent disfigurement, physical pain, emotional distress, and financial harm.

**COUNT III: BREACH OF IMPLIED WARRANTIES**

41. Plaintiff incorporates paragraphs 1 through 40 by reference as if fully set forth herein.

42. Defendant impliedly warranted that the subject 17VS-C log splitter and conveyor system was merchantable, safe, and fit for the ordinary commercial purposes for which such equipment is utilized.

43. Defendant breached these implied warranties because the product was inherently dangerous, defectively designed, and prone to unintended, catastrophic actuation during routine operational tasks.

44. As a direct and proximate result of Defendant's breach of implied warranties, Plaintiff Douglas Lesher suffered severe personal injuries, pain, disfigurement, and financial losses.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff Douglas Lesher respectfully requests judgment in his favor and against Defendant Wolfe Ridge MFG LLC for compensatory damages in an amount exceeding Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, together with delay

damages under Pa.R.C.P. 238, costs of suit, and such other relief as this Court deems necessary and appropriate.

**DEMAND FOR JURY TRIAL**

Plaintiff Douglas Lesher hereby demands a trial by jury on all issues and claims so triable.

Respectfully submitted,

**N.W. MATTIACCI LAW, LLC**

BY: ***/s/ Nicholas W. Mattiacci***

Nicholas W. Mattiacci, Esq., L.L.M.
804 West Avenue
Jenkintown, PA 19046
(215) 690-4201 (office)
(267) 202-5452 (facsimile)
E-mail: nwm@mattilaw.com
*Counsel for Plaintiff Douglas Lesher*